IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SAMUEL MORELAND,                                       Case No. 16-cv-379-pp

               Petitioner,

v.

MICHAEL MEISNER,

               Respondent.

**ORDER SCREENING PETITION (DKT. NO. 1) AND REQUIRING RESPONSE**

I.  **INTRODUCTION**

On March 28, 2016, Samuel Moreland, representing himself, filed a petition pursuant to 28 U.S.C. §2254, asserting that his state conviction and sentence violated the Constitution. Dkt. No. 1. He paid the $5.00 at the time he filed the petition. Id. The court now will screen the petition.

II. **PROCEDURAL HISTORY**

On January 7, 2009, the State of Wisconsin filed a complaint against the petitioner in Milwaukee County Circuit Court. See State v. Moreland, No. 2009CF000050, available at  https://wcca.wicourts.gov. The complaint charged the defendant with first-degree reckless homicide by delivering drugs. Wis. Stat. §940.02(2)(a). A jury found the defendant guilty, and on July 19, 2010, the state court sentenced the petitioner to the maximum term of ten years of incarceration, followed by ten years of extended supervision. Id., MKE Cnty. Dkt. No. 70.

1

On July 22, 2010, the petitioner filed two notices of intent to pursue post-conviction relief. MKE Cnty. Dkt. Nos. 65, 66. On March 28, 2011, he filed a motion for a new trial. MKE Cnty. Dkt. No. 46. On July 11, 2011, the trial court denied the motion, MKE Cnty. Dkt. No. 37; Moreland v. Meisner, 16-cv-379 (E.D. Wis.) at Dkt. No. 1-1, and on July 22, 2011, the petitioner appealed to the Wisconsin Court of Appeals, MKE Cnty. Dkt. No. 34. On November 1, 2012, the court of appeals affirmed the state court's decision. MKE Cnty. Dkt. No. 28; Moreland v. Meisner, 16-cv-379 at Dkt. No. 1-2. On December 3, 2012, the court of appeals denied the petitioner's motion for reconsideration and denied his motion to appoint counsel. MKE Cnty. Dkt. No. 27. On May 13, 2013, the Wisconsin Supreme Court denied the petition for review. MKE Cnty. Dkt. No. 24; Moreland v. Meisner, 16-cv-379 at Dkt. No. 1-3.

On September 23, 2013, the petitioner filed in Milwaukee County Circuit Court a *pro se* motion for post-conviction discovery. MKE Cnty. Dkt. No. 22. On September 26, 2013, the circuit court denied that motion. MKE Cnty. Dkt. No. 20. On October 10, 2013, the petitioner filed a motion for reconsideration, MKE Cnty. Dkt. No. 19, and on October 11, 2013, the court denied that motion, MKE Cnty. Dkt. No. 17.

On July 30, 2014, the petitioner filed another motion for post-conviction relief in Milwaukee County, this time representing himself. MKE Cnty. Dkt. No. 16. On August 5, 2014, the circuit court denied the motion, MKE Cnty. Dkt. No. 14, and on August 15, 2014, the petitioner filed a notice of appeal, MKE Cnty. Dkt. No. 13. On October 21, 2014, the petitioner filed an emergency

2

motion for appointment of counsel, MKE Cnty. Dkt. No. 9, which the circuit court denied on October 24, 2014, MKE Cnty. Dkt. No. 7. On January 23, 2015, the Wisconsin Court of Appeals denied the petitioner's petition for supervisory writ *ex parte*. MKE Cnty. Dkt. No. 6. On December 22, 2015, the court of appeals denied the petitioner's appeal of the circuit court's August 5, 2014 denial of post-conviction relief. MKE Cnty. Dkt. No. 4. On January 14, 2016, the petitioner sought review with the Wisconsin Supreme Court, MKE Cnty. Dkt. No. 3, and on March 10, 2016, that court denied the petition for review, MKE Cnty. Dkt. No. 2.

### III. CLAIMS RAISED IN THE PETITION

The Wisconsin District I Court of Appeals recited the following factual background for the petitioner's claims:

> In January 2009, the State charged Moreland with first-degree reckless homicide in the death of Niki Domineck. According to the criminal complaint, police and paramedics responded to a call from Moreland's apartment reporting that Domineck was not breathing. Dominick was later pronounced dead at a hospital. A toxicology analysis performed by Dr. Susan Gock, Technical Director of the Milwaukee County Medical Examiner Toxicology Unit, revealed the cause of death was an overdose of the pain medication Fentanyl.
>
> Moreland gave the police the following account of the events leading up to Domineck's death. Moreland had discovered that Domineck had taken one of his prescription pain medication patches, which contained the medication Fentanyl, and placed it on her leg. Moreland removed the patch from Domineck's leg and told her it was wrong for her to use the patch. Moreland and Domineck then went to sleep. The next day Moreland discovered that Domineck was cold and non-responsive, and Moreland called 9-1-1.
>
> Two individuals, Andrew Goldberg and Latoya Sanders, later told police that Moreland informed them after Domineck's death

3

that he had given Domineck the Fentanyl patch. Goldberg stated that Moreland said that Moreland and Domineck cut the patch open so that they could orally ingest the gel inside the patch.

The Milwaukee County Medical Examiner analyst referenced above who had performed the toxicology analysis of Domineck's blood, Dr. Gock, was unavailable to testify at trial due to serious health issues. The State offered testimony by Dr. Gock's supervisor, Dr. Steven Wong, as to his independent opinion based on the results of the testing done by Dr. Gock. Moreland moved to exclude Dr. Wong's testimony, contending that allowing Dr. Wong to testify as to his opinion based in part on Dr. Gock's analysis violated Moreland's Sixth Amendment right to confrontation. The circuit court denied Moreland's motion to exclude Dr. Wong's testimony. Moreland then moved to adjourn the trial to have the evidence retested by the state crime laboratory. The court denied the motion.

Dr. Wong testified at trial that he analyzed the data that was collected in connection with the case number assigned to Domineck's case, and determined that Fentanyl was present in her blood at a potentially fatal concentration of twenty-three nanograms per milliliter.

A pharmacist testified for the State that the packet of Fentanyl patches retrieved from Moreland's apartment were for Fentanyl patches that contain a gel reservoir of the medicine. He testified that it would be impossible to obtain a blood level of Fentanyl of twenty-three nanograms per milliliter by wearing one patch, but that it would be possible to reach that level by wearing several patches for a few days or by ingesting the patch. However, the parties later reached a stipulation that the type of patch retrieved from Moreland's apartment was an adhesive layer style patch that did not contain the medicine in gel form.

The State also presented testimony by Goldberg and Sanders. Both testified that Moreland informed them he caused Domineck's death by giving her the Fentanyl patch.

Defense counsel cross-examined Dr. Wong as to his involvement in the testing and argued in closing that the State had failed to offer sufficient evidence that Domineck's blood contained a fatal level of Fentanyl. Defense counsel also argued that Goldberg and Sanders were not credible, including Goldberg's story that Moreland reported cutting open a patch to reach the gel inside was false because Moreland's type of patch did not contain any gel.

4

> Defense counsel argued that, as opposed to the State's version, Moreland had provided police with a credible version of the events leading to Domineck's death.
>
> Moreland was convicted on a jury verdict, and filed a postconviction motion for a new trial. Moreland claimed ineffective assistance of counsel and sought a new trial in the interest of justice. The court denied the motion without an evidentiary hearing. Moreland appeals.

Moreland v. Meisner, Dkt. No. 1-2 at 2-4.

In his petition for *habeas* relief, the petitioner asserts six grounds for relief. Dkt. No. 1 at 6-10. In ground one, he asserts that he "was denied the right to confrontation of a witness contrary to the 6th amend [sic] of the US Constitution." Dkt. No. 1 at 6. The claim relates to the fact that Dr. Gock did not testify (she was unavailable due to health issues), and that Dr. Wong "only analyzed the numbers that came out of the machine . . . 3 years earlier at time of autopsy." Id. at 6-7.

In ground two, the petitioner states "a Due [P]rocess violation occurred when the trial court would not allow a retest of the blood the missing toxicologist [Dr. Gock] tested." Id. at 7. According to the petitioner, "the toxicologist [Dr. Gock] may have had [an] issue with her health at the time she tested the blood." Id.

In ground three, the petitioner claims that his "trial coun[s]el was ineffective when he did not have an expert explain how different types of fentanyl patches function." Id. He also asserts that his counsel failed to "contront[] informant with his 10 criminal convictions." Id. According to the petitioner, his counsel stipulated that "Moreland's fentanyl patch does not

5

contain gel." Id. (internal quotation marks omitted). The stipulation was based on testimony of an informant and testimony by the state's expert witness, both of which the petitioner asserts "incorrectly testified they have gel." Id.

In ground four, the petitioner argues that he received "ineffective assistance of trial counsel's failure to investigate medical evidence of fentanyl and his defendant's medical records." Id. at 8. He asserts, "The State's theory was the victim had a high level of fentanyl in her blood that could have only came from abusing one of Mr. Moreland [sic] fentanyl prescription patches with him and died as a result." Id. The petitioner argues that he "has shown a high result can come from the body able to 'store-up' a high level of the drug and not pin point any particular dose." Id. The petitioner also claims that his attorney failed to investigate that "[a] small amount is fatal to someone with asthma and pneumonia regardless of a high tolerance to the drug." Id. Within this claim, the petitioner argues that the Wisconsin Court of Appeals "did not con[s]ider any of the medical evidence presented above and that with it the jury would have had to doubt the state's case and find Mr. Moreland not guilty." Id. at 9. He further argues that his trial counsel was ineffective for failing to investigate his story—that the victim stole one of his patches and wore it only a short period of time—and not investigating the petitioner's own mental health. Id. The petitioner also asserts that his trial attorney "only spent an hour with his client." Id. He argues that the court of appeals failed to consider the dates of the petitioner's own illness (before and after Ms. Domineck's death and before and after trial." Id. He alleges that he did not understand the charge

6

against him, and states that he "may have plead guilty despite having communication problems." Id.

This ground encompasses several claims, including a claim for ineffective assistance of trial counsel, a claim of insufficiency of the evidence, and a claim that his plea was not knowing and voluntary.

In ground five, the petitioner asserts a claim based on prosecutorial misconduct, arguing that this was a violation of the Due Process clause. Id. at 10. He asserts that the prosecutor knew that the State's expert and the informant "would give incorrect testimony to the jury that it is possible to squeeze drugs out of Mr. Moreland's fentanyl patch prescription." Id. He also argues that the prosecutor "use[d] a bogus petition in his State's Response to Defendant's Post Conviction Motion for a New Trial." Id.

In his sixth and final claim, the petitioner alleges "jury bias" in violation of his "right to a fair and impartial jury." Id. He states that the jury bias "occurred when nothing was done to correct the statement 'Mr. Moreland committed first degree reckless homicide,'" which he claims was made during the jury selection process. Id.

## IV. EXHAUSTION OF REMEDIES

In order to decide whether to allow this case to move forward, the court first must determine whether the petitioner appears, on the face of his petition, to have exhausted his state remedies on these claims. Section 2254 states, "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it

7

appears that . . . the applicant has exhausted the remedies available in the courts of the State . . . ." The United States Court of Appeals for the Seventh Circuit has held that a district court judge cannot consider the merits of a petitioner's habeas argument "unless the state courts have had a full and fair opportunity to review them." Farrell v. Lane, 939 F.2d 409, 410 (7th Cir. 1991). This means, basically, that before a person can get a federal judge to review his arguments on a *habeas* petition, that person first must appeal the issue all the way up to the highest court in the state for a ruling on the merits. Lieberman v. Thomas, 505 F.3d 665, 669 (7th Cir. 2007) (citations omitted). When a federal judge reviews a petition and realizes that the petitioner has not exhausted his state-court remedies, the judge may either dismiss the case entirely, stay the federal case to let the petitioner go back to state court to exhaust his remedies, or allow the petitioner to amend his petition to remove the unexhausted claims. 28 U.S.C. §2254(b)(1)(A). See also Rhines v. Weber, 544 U.S. 269, 278 (2005); Rose v. Lundy, 455 U.S. 509, 510 (1982); Dressler v. McCaughtry, 238 F.3d 908, 912 (7th Cir. 2001).

Mr. Moreland attached several state court decisions to his petition. On July 11, 2011, the Milwaukee County Circuit Court denied the petitioner's motion for a new trial. Dkt. No. 1-1. The trial court addressed the issue of ineffective assistance of trial counsel "for failing to present a toxicology expert to completely undermine the State's theory that a person cannot overdose from a fentanyl patch manufactured by Mylan if it is chewed or attached to the membranes of the mouth lining, i.e. cheek." Id. at 1. The state court "agree[d]

8

with the State's position on the Mylan patch," and thus "denie[d] the defendant's motion for a new trial on the first issue." Id. at 2. The court also, in three sentences, addressed the "trial counsel's failure to impeach" Andrew Goldberg "with his prior convictions." Id. The court found that this "did not" prejudice the defendant's case. Id. And for informant Sanders, the court found that there was nothing the defendant's attorney could have used to impeach her testimony, because her "record amount[ed] to nothing from a criminal standpoint." Id. It appears, therefore, that the defendant raised one issue—ineffective assistance of counsel—with two sub-parts—failure to call a toxicology expert and failure to impeach Goldberg and Sanders with their prior criminal histories.

On November 1, 2012, the Wisconsin Court of Appeals affirmed the state court's decision. Dkt. No. 1-2. According to the court of appeals, the petitioner sought

> a new trial based on: (1) his trial counsel's failing to present expert testimony to rebut the State's evidence as to the victim's cause of death and counsel's failing to impeach one of the State's witnesses; (2) the circuit court's allowing an expert witness for the State to testify regarding a toxicology analysis relying in part on results of tests the expert is professionally familiar with but did not personally perform; and (3) the circuit court's denying Moreland's request to adjourn the trial and order the state crime laboratory to retest the victim's blood.

Id. at 1-2. The appeals court affirmed the circuit court's ruling on the first claim. Id. at 7-9. Although it doesn't appear that the petitioner had raised this claim in the circuit court, the court of appeals rejected the petitioner's

9

argument that Dr. Wong's testimony violated his Sixth Amendment right to confront the witnesses against him. Id. at 10-11. Finally, while again it does not appear that the petitioner had raised this below, the court of appeals rejected the petitioner's argument that the circuit court abused its discretion in denying his motion to adjourn the trial so that he could have the victim's blood retested. Id. at 11. On May 13, 2013, the Wisconsin Supreme Court denied the petition for review. Dkt. No. 1-3. It appears at this early stage in the *habeas* case, therefore, that the petitioner has exhausted his remedies on the ineffective assistance of counsel claims described above, the Confrontation Clause claim, and any claim that the trial court erred in failing to adjourn the trial for more testing.

On August 5, 2014, the Milwaukee County Circuit Court denied the petitioner's second (*pro se*) motion for post-conviction relief. Dkt. No. 1-4. The court's decision is very brief—one page—and indicates that the petitioner "claim[ed] that postconviction/appellate counsel was ineffective for failing to raise multiple issues." Id. The circuit court determined that that claim was "conclusory." Id. at 1. Specifically, the circuit court referred to the Wisconsin Supreme Court's decision in Nelson v. State, in which that court held:

> If the defendant fails to allege sufficient facts in his motion to raise a question of fact, or presents only conclusory allegations, or if the record conclusively demonstrates that the defendant is not entitled to relief, the trial court may in the exercise of its legal discretion deny the motion without a hearing.

Id. (quoting Nelson v. State, 54 Wis. 2d 489, 497-98 (1972)).

On December 22, 2015, the Wisconsin Court of Appeals affirmed that decision. Dkt. No. 1-5. The appeals court recounted that the petitioner had "alleged ineffective postconviction and appellate counsel for failing to challenge his competency, object to juror bias, investigate prosecutorial misconduct, and pursue additional witnesses and information." Id. at 2. The appellate court "agree[d] with the circuit court that Moreland's motion is conclusory," id. at 4, but did its best to analyze the claims with the little information it had. After conducting that analysis, the court noted that "[c]onclusory postconviction motions receive evidentiary hearings at the circuit court's discretion. Moreland's motion was conclusory. We discern no erroneous exercise of discretion in its denial of the motion without a hearing." Id. at 6. On March 7, 2016, the Wisconsin Supreme Court denied the petition for review. Dkt. No. 1-6.

Thus, in his second request for post-conviction relief, the plaintiff appears to have at least raised the issues of whether his trial attorney was ineffective for failing to raise the question of the petitioner's competency, failing to object to the question asked during jury selection, failing to challenge prosecutorial misconduct, and failure to present additional witnesses and evidence.

Based on the assertions in the petition, coupled with the decisions of the Milwaukee County Circuit Court, Wisconsin Court of Appeals, and the Wisconsin Supreme Court, it appears at this early stage in the *habeas* proceedings that the petitioner has exhausted his state remedies on the six

11

grounds raised in the petition. The court notes that it has not made a full review of whether the plaintiff properly exhausted these claims, or whether he has procedurally defaulted on any of these claims; nothing in this order prevents the respondent from raising the exhaustion issue in his pleadings.

**V.     PROCEDURAL DEFAULT**

Even if a petitioner has exhausted all of his claims by presenting them to the highest court in the state system, a federal *habeas* court still cannot entertain claims on which the petitioner has procedurally defaulted.

Under Wisconsin's post-conviction procedures, a §974.06 motion is the equivalent of a petition for a writ of *habeas corpus*. Morales v. Boatwright, 580 F.3d 653, 656 (7th Cir. 2009). The petitioner correctly filed his §974.06 motion in the trial court where he was convicted, because "§974.06 motions challenging the effectiveness of appellate counsel on the grounds that appellate counsel should have challenged trial counsel's effectiveness should be filed in the trial court." Id.

For a Wisconsin court to grant an evidentiary hearing to a defendant on a §974.06 motion, however, the defendant must allege "sufficient material facts—*e.g.,* who, what, where, when, why, and how—that, if true, would entitle him to the relief he seeks." State v. Allen, 274 Wis. 2d 568, 573, 682 N.W.2d 433, 436 (2004). A defendant is entitled to an evidentiary hearing on a §974.06 motion only if the motion alleges facts that, if true, would entitle him to relief under the standards in Strickland v. Washington, 466 U.S. 668, 104 S. Ct.

12

2052 (1984). Allen, 274 Wis. 2d at 587, 682 N.W.2d at 442. Under Strickland, a claim of ineffective assistance of counsel has two parts:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland, 466 U.S. at 687, 104 S. Ct. at 2064. A §974.06 motion alleging ineffective assistance of counsel must give the trial court facts that allow the court "to meaningfully assess" the claim, including facts that allow the court to assess the claim of prejudice; conclusory allegations without factual support are insufficient to establish the right to a hearing or relief. State v. Bentley, 201 Wis. 2d 303, 316, 548 N.W.2d 50, 56 (1996); see also Allen, 274 Wis. 2d at 576, 682 N.W.2d at 437.

Thus, Strickland explains the substantive standards that the trial court uses to evaluate a §974.06 motion, but Allen's procedural rule governs whether a defendant is entitled to an evidentiary hearing on a §974.06 motion in the first place. If the defendant does not give the trial court the information required by Allen, the court can deny his motion without a hearing. Allen, 274 Wis. 2d at 579-80, 682 N.W.2d at 438-39. The trial court's denial of a §974.06 motion on that ground does not reach the merits of the defendant's ineffective assistance claim; it means the court didn't have enough information to even grant a hearing on the merits of the claim. See Lee v. Foster, 750 F.3d 687, 693 (7th Cir. 2014). And, because the Allen rule is well-established and consistently

13

followed in Wisconsin, a defendant can "procedurally default" his ineffective assistance claim if he fails to give the state trial court enough information to begin with. Id. at 693-94.

So, in the petitioner's case, Allen requires that his second motion for post-conviction relief—the one he filed himself, without counsel, on July 30, 2014—had to contain facts that, if true, established that (1) the petitioner's trial counsel's performance was constitutionally deficient, and (2) but for counsel's errors, the result of the trial would have been different. Allen, 274 Wis. 2d at 587, 682, N.W.2d at 442-43. If his §974.06 motion did not show a reasonable probability that the result of the trial would have been different, the trial court did not need to evaluate the trial counsel's performance. State v. Moats, 156 Wis. 2d 74, 101, 457 N.W.2d 299, 311 (1990).

The Milwaukee County Circuit Court did not expressly refer to Allen when it evaluated the petitioner's July 30, 2014 post-conviction motion. Dkt. No. 1-4. It simply stated that the motion was "conclusory," and that the "[petitioner] ha[d] not set forth any specifics related to his claims, and therefore, his motion [did] not set forth a viable claim for relief." Id. The trial court dismissed the motion without an evidentiary hearing. Id.

The Wisconsin Court of Appeals began by noting that, "[o]n appeal, we typically review only the allegations contained in the four corners of the postconviction motion, not any additional allegations that are contained in the appellate brief. See Allen, 274 Wis. 2d 568, ¶27." Dkt. No. 1-5 at 3. The court then addressed each of the claims the petitioner had raised in his *pro se*

14

postconviction motion. The court first evaluated the petitioner's claim that his postconviction/appellate counsel had "overlooked 'defendant's competency' and his 'prescription records.'" Id. at 3-4. The court noted that the petitioner had attached some doctors' diagnoses to his motion, but explained that "[t]he mere fact that [the petitioner] has a psychiatric illness does not necessarily render him incompetent to participate in his defense," and noted that the petitioner had not explained how his mental health diagnosis affected his competency. Id. at 4. The court then turned to the petitioner's claim of juror bias, noting that the motion was "largely devoid of facts, although Moreland did include a page from the *voir dire* transcript, where trial counsel asked a juror, 'When the judge told you Mr. Moreland committed first-degree reckless homicide, then what did you do?'" Id. Observing that the petitioner had expressed concern that this statement tainted the jury pool, the court indicated that it had reviewed the entire transcript of the *voir dire*, and that while counsel might have phrased the question better, the petitioner had not demonstrated that he suffered any prejudice as a result of the question. Id. at 5.

As to the petitioner's prosecutorial misconduct claim, the appellate court noted that the motion was "no more specific than that," but that in his brief the petitioner had argued that the prosecutor knowingly introduced false evidence about ingestion of Fentanyl patches. Id. The appellate court concluded that this was just another version of the petitioner's claim, raised and decided in his first appeal, that his attorney should have retained an expert to counter the State's evidence on this issue. Id. Finally, the court addressed the petitioner's

15

argument that his postconviction counsel was ineffective for "not pursuing additional witnesses like 'other drug addicts' Dominick lived with 'who could possibly explain her drug habits in more dept[h]' than what Moreland told the police." Id. at 6. The appellate court agreed with the trial court that this allegation was wholly conclusory; "Moreland has not identified with any specificity who would have more information, what that information is, why it matters, or how it would have changed the results of the trial. *See **Allen***, 274 Wis. 2d 568, ¶23 (adequate postconviction motion covers who, what, where, when, why and how)." Id.

The court cannot tell, at this point in the proceedings, whether the appellate court's decision establishes procedural default with regard to the claims the petitioner raised in his July 30, 2014 postconviction motion—whether the court of appeals based its decision on an independent and adequate state procedural ground which bars review of the merits by a federal *habeas* court. The court will, at this screening stage, allow the petitioner to proceed on this claims, but again, nothing in this decision bars the respondent from raising the issue at a later stage if the respondent believes any of the petitioner's claims are procedurally defaulted.

## VI.   AVAILABILITY OF FEDERAL RELIEF

The court now considers whether the petitioner has raised claims for which the court might grant federal *habeas* relief. Section 2254(a) allows a federal district court to consider the merits of a *habeas* petition when the petitioner claims "that he is in custody in violation of the Constitution or laws

16

or treaties of the United States." Rule 4 of the Rules Governing §2254 Cases requires a district court to "screen" a §2254 petition, to make sure the petition alleges a claim for which a federal court may grant habeas relief. That rule says:

> If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner. If the petition is not dismissed, the judge must order the respondent to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

In "screening" a §2254 petition, the court tries to figure out whether the petitioner has laid out cognizable constitutional or federal law claims.

The petitioner's first claim arises under the Sixth Amendment to the Constitution. The Sixth Amendment guarantees the "right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. It prohibits the prosecution from admitting "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had . . . a prior opportunity for cross-examination." Crawford v. Washington, 541 U.S. 36, 54 (2004). Therefore, the defendant's first ground for relief is a claim for which a federal court could grant *habeas* relief (in the event that the plaintiff has exhausted the claim, and that the court finds, after further briefing, that the claim has merit).

The petitioner's second claim arises under the Due Process Clause of the Fourteenth Amendment. That amendment states that no state may "deprive any person of life, liberty, or property, without due process of law." "There is a

17

long-standing recognition that a criminal defendant has a due process right to be sentenced based on accurate information." Benson v. Douma, No. 14-C-249, 2014 WL 1338836, at *1 (E.D. Wis. April 3, 2014) (citing United States v. Tucker, 404 U.S. 443, 447-48 (1972); Townsend v. Burke, 334 U.S. 736, 740-41 (1948); Ben-Yisrayl v. Buss, 540 F.3d 542, 554 (7th Cir. 2008)). The court finds that the petitioner's second claim is a claim for which a federal court could grant *habeas* relief.

The petitioner's third and fourth claims—that he received ineffective assistance of trial counsel—arise under the Sixth Amendment to the Constitution.[1] That amendment guarantees a defendant in a criminal trial the right to have "assistance of counsel for his defense;" to be meaningful, that assistance must be effective. Strickland v. Washington, 466 U.S. 668 (1984). The court finds that the petitioner's third and fourth claims are claims for which a federal court could grant *habeas* relief.

The fifth claim alleges "prosecutorial misconduct." "A prosecutor's misconduct must have 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Wilmington v. Sternes, 108 Fed.Appx. 405, 408 (7th Cir. 2004) (quoting Darden v. Wainright, 477 U.S. 168, 181 (1986)). Therefore this claim arises under the Due Process Clause of

---

[1] On May 23, 2016, the clerk's office received from the plaintiff a letter, with a partial transcript attached. Dkt. No. 4. The letter asked the clerk to allow the letter and transcript to "serve as an addition" to the *habeas* petition, to support his claim that his trial attorney was ineffective for failing to investigate medical evidence the petitioner discovered after he lost his direct appeal. Id. at 1. The respondent should consider this "supplement" when considering its response to the petition, and in any other substantive pleadings.

18

Case 2:16-cv-00379-PP   Filed 07/18/16   Page 18 of 20   Document 5

the Fourteenth Amendment and is a claim for which this court could grant *habeas* relief.

The petitioner's sixth claim—that he did not receive a fair trial as a result of jury bias—is a claim arising under the Sixth Amendment. That amendment guarantees a defendant a trial "by an impartial jury." U.S. CONST. amend. VI. The right also "binds the states through the Fourteenth Amendment's Due Process Clause." Porter v. Gramley, 112 F.3d 1308, at 1315 (7th Cir. 1997) (citing Duncan v. Louisiana, 391 U.S. 145, 148-49 (1966)). Therefore this claim is a claim for which this court could grant *habeas* relief.

### VII. CONCLUSION

For the above reasons, the court **ORDERS** that the petitioner may proceed on all six of his claims.

The court **ORDERS** that within sixty (60) days of the date of this order, the respondent shall **ANSWER OR OTHERWISE RESPOND** to the petition, complying with Rule 5 of the Rules Governing §2254 Cases, and showing cause, if any, why the writ should not issue.

The court **ORDERS** that the parties must comply with the following schedule for filing briefs on the merits of the petitioner's claims:

(1) the petitioner has **forty-five (45) days** after the respondent files his answer to file his brief in support of his petition;

(2) the respondent has **forty-five (45) days** after the petitioner files his initial brief to file the respondent's brief in opposition; and

(3) the petitioner has **thirty (30) days** after the respondent files his opposition brief to file a reply brief, if the petitioner chooses to file such a brief.

If, instead of filing an answer, the respondent files a dispositive motion, the respondent must include a brief and other relevant materials in support of the motion. The petitioner then must file a brief in opposition to that motion within **forty-five (45) days** of the date the respondent files the motion. If the respondent chooses to file a reply brief, he must do so within **thirty (30) days** of the date the petitioner files the opposition brief.

Pursuant to Civil Local Rule 7(f), briefs in support of or in opposition to the habeas petition and any dispositive motions shall not exceed **thirty (30)** pages, and reply briefs may not exceed **fifteen (15)** pages, not counting any statements of facts, exhibits and affidavits.

Pursuant to the Memorandum of Understanding between the Attorney General and this court, the court will send a copy of the petition and this order to the Attorney General for the State of Wisconsin and to the Warden of Redgranite Correctional Institution.

Dated in Milwaukee, Wisconsin this 18th day of July, 2016.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge