UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SAMUEL MORELAND,

          Petitioner,

v.                                  Case No. 16-cv-379-pp

MICHAEL MEISNER,

          Respondent.

---

**ORDER GRANTING RESPONDENT'S MOTION TO DISMISS (DKT. NO. 9), DENYING AS MOOT PETITIONER'S MOTION FOR ORDER (DKT. NO. 15), DENYING AS MOOT PETITIONER'S MOTION TO RENEW INFORMATION, GRANT TOLLING AND APPOINT COUNSEL (DKT. NO. 16), DISMISSING CASE AND GRANTING A CERTIFICATE OF APPEALABILITY**

---

On March 28, 2016, the petitioner filed a petition for a writ of *habeas corpus* under 28 U.S.C. §2254, challenging his 2009 conviction in Milwaukee County Circuit Court for first-degree reckless homicide and drug delivery. Dkt. No. 1. The court screened the petition and allowed him to proceed on all six of his grounds for relief. Dkt. No. 5. On September 16, 2016, the respondent filed a motion to dismiss, arguing that the petitioner had filed his petition nine days late. Dkt. No. 9. The petitioner responded, dkt. no. 11, and filed a motion for equitable tolling, dkt. no. 13, which the court construed as a sur-reply brief, dkt. no. 14. Since then, the petitioner has filed two additional motions—one asking the court to allow the petition to proceed as timely, dkt. no. 15, and one asking the court to "renew information to grant tolling and to appoint counsel," dkt. no. 16. The petitioner has not demonstrated the extraordinary

1

circumstances warranting equitable tolling. The court will grant the respondent's motion to dismiss, deny his other motions and issue a certificate of appealability.

## I.    Background

The court explored the procedural history of the petitioner's state court case in its July 18, 2016 screening order. That order stated,

> On January 7, 2009, the State of Wisconsin filed a complaint against the petitioner in Milwaukee County Circuit Court. See State v. Moreland, No. 2009CF000050, available at https://wcca. wicourts.gov. The complaint charged the defendant with first-degree reckless homicide by delivering drugs. Wis. Stat. §940.02(2)(a). A jury found the defendant guilty, and on July 19, 2010, the state court sentenced the petitioner to the maximum term of ten years of incarceration, followed by ten years of extended supervision. Id., MKE Cnty. Dkt. No. 70.
>
> On July 22, 2010, the petitioner filed two notices of intent to pursue post-conviction relief. MKE Cnty. Dkt. Nos. 65, 66. On March 28, 2011, he filed a motion for a new trial. MKE Cnty. Dkt. No. 46. On July 11, 2011, the trial court denied the motion, MKE Cnty. Dkt. No. 37; Moreland v. Meisner, 16-cv-379 (E.D. Wis.) at Dkt. No. 1-1, and on July 22, 2011, the petitioner appealed to the Wisconsin Court of Appeals, MKE Cnty. Dkt. No. 34. On November 1, 2012, the court of appeals affirmed the state court's decision. MKE Cnty. Dkt. No. 28; Moreland v. Meisner, 16-cv-379 at Dkt. No. 1-2. On December 3, 2012, the court of appeals denied the petitioner's motion for reconsideration and denied his motion to appoint counsel. MKE Cnty. Dkt. No. 27. On May 13, 2013, the Wisconsin Supreme Court denied the petition for review. MKE Cnty. Dkt. No. 24; Moreland v. Meisner, 16-cv-379 at Dkt. No. 1-3.
>
> On September 23, 2013, the petitioner filed in Milwaukee County Circuit Court a *pro se* motion for post-conviction discovery. MKE Cnty. Dkt. No. 22. On September 26, 2013, the circuit court denied that motion. MKE Cnty. Dkt. No. 20. On October 10, 2013, the petitioner filed a motion for reconsideration, MKE Cnty. Dkt. No. 19, and on October 11, 2013, the court denied that motion, MKE Cnty. Dkt. No. 17.

On July 30, 2014, the petitioner filed another motion for post-conviction relief in Milwaukee County, this time representing himself. MKE Cnty. Dkt. No. 16. On August 5, 2014, the circuit court denied the motion, MKE Cnty. Dkt. No. 14, and on August 15, 2014, the petitioner filed a notice of appeal, MKE Cnty. Dkt. No. 13. On October 21, 2014, the petitioner filed an emergency motion for appointment of counsel, MKE Cnty. Dkt. No. 9, which the circuit court denied on October 24, 2014, MKE Cnty. Dkt. No. 7. On January 23, 2015, the Wisconsin Court of Appeals denied the petitioner's petition for supervisory writ *ex parte*. MKE Cnty. Dkt. No. 6. On December 22, 2015, the court of appeals denied the petitioner's appeal of the circuit court's August 5, 2014 denial of post-conviction relief. MKE Cnty. Dkt. No. 4. On January 14, 2016, the petitioner sought review with the Wisconsin Supreme Court, MKE Cnty. Dkt. No. 3, and on March 10, 2016, that court denied the petition for review, MKE Cnty. Dkt. No. 2.

Dkt. No. 5. The order erred in one respect; the Wisconsin Supreme Court denied the petitioner's petition for review on March 7, 2016, not March 10, 2016. Dkt. No. 1-6. The petitioner filed this *habeas* case twenty-one days later, on March 28, 2016. Dkt. No. 1.

The petition alleged six grounds for relief: (1) that the petitioner was denied his right to confront a witness; (2) that he was denied due process when the trial court did not order a retest of a blood sample; (3) that trial counsel was ineffective for not calling an expert to testify about fentanyl patches and not impeaching the government's informant with the informant's prior convictions; (4) that trial counsel was ineffective for failing to investigate the medical effects of fentanyl; (5) that the prosecutor engaged in misconduct in presenting testimony the prosecutor knew to be incorrect; and (6) that prosecutor tainted the jury by saying that the petitioner committed first-degree reckless homicide during jury selection. Dkt. No. 1. Within sixty days of the

court's screening order, the respondent filed a motion to dismiss the petition. Dkt. no. 9.

## II.    **Respondent's Motion to Dismiss (Dkt. No. 9)**

### A.    Parties' Arguments

The respondent asks the court to dismiss the case because the petition is untimely. Dkt. No. 9. After accounting for statutory tolling, the respondent calculates that 374 days elapsed on the one-year statute of limitations clock before the petitioner filed this federal *habeas* petition. Dkt. No. 10 at 2. The respondent shows that most of that time—353 days—ran from the expiration of the petitioner's deadline to pursue direct review (August 11, 2013) until the time he filed for collateral relief in the state court (July 30, 2014). Id. The remaining twenty-one days elapsed between the date the Wisconsin Supreme Court denied review (March 7, 2016) and the date the petitioner filed this petition (March 28, 2016). Id. In a footnote, the respondent says that the petitioner filed a post-conviction discovery motion on September 23, 2013 (denied on September 26, 2013) and a motion for reconsideration on October 10, 2013 (denied the next day—October 11, 2013). Dkt. No. 10 at 5, n.2 (citing dkt. no. 5 at 2). The respondent says that the court should not construe these motions as "properly filed" such that they count for the purposes of statutory tolling under 28 U.S.C. §2244(d)(2), but argues that even they did, the petition still is five days late. Id. at 5-6, n.2.

The petitioner does not challenge the respondent's calculations. Rather, he argues "there [are] four reasons for equitabl[y] tolling the statute of

limitations on this case[.]" Dkt. No. 11 at 1. First, the petitioner alleges that he "suffered from the negative symptoms of schizophrenia that impaired his ability to start and follow through with the many demands required for legal work." Dkt. No. 11 at 1. Second, he alleges that the state prevented him from filing his petition on time by (a) precluding him from doing research while the library was closed for foggy weather and because of understaffing at the Wisconsin Department of Corrections; (b) preventing him from doing research during a major, institutional four-day lockdown and search; and (c) not locating the petitioner's legal work while the petitioner spent time in segregation. Dkt. No. 11 at 2. Third, the petitioner contends that he pursued his rights with reasonable diligence as shown by the correspondence he submits. Dkt. No. 11 at 2. Last, the petitioner argues that his untimely filing should be excused because "he has presented exculpatory scientific evidence not previously considered." Dkt. No. 11 at 3.

In reply, the respondent argues that the petitioner's schizophrenia does not entitle him to equitable relief. Dkt. No. 12. The respondent points to the petitioner's Wisconsin Department of Correction psychiatric report from October 15, 2013, which stated "it does not appear that [the petitioner] has taken either his Benadryl or risperidone in a fairly extended period of time." Dkt. No. 11-1 at 5. The respondent notes that another psychiatric report— dated March 3, 2016—listed the petitioner's schizophrenia as being in "Near Complete Remission." Dkt. No. 12 at 2 (citing dkt. no. 11-1 at 6). The respondent characterizes the petitioner's complaints of the law library being

closed, being in lockdown and being in segregation as "common difficulties associated with imprisonment" which do not warrant the extraordinary remedy of equitable tolling. Id. at 2. As for the petitioner's claim regarding unconsidered exculpatory evidence, the respondent contends that the petitioner's claim is conclusory, speculative and does not show that the evidence was unavailable during his trial. Id. at 3.

B.    Analysis

1.    *Statute of Limitations under AEDPA*

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") institutes a one-year statute of limitations for petitioners seeking federal *habeas* relief. 28 U.S.C. §2244(d)(1). The one-year period begins to run from the latest of the following four events

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or law of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2244(d)(1)(A)-(D). The petitioner does not argue that the state imposed some filing impediment that it later removed. He does not argue that

he is asserting a right newly recognized by the Supreme Court. He does not argue that his *habeas* claims are based on newly discovered evidence that he could not have discovered earlier through the exercise of due diligence. That leaves 28 U.S.C. §2244(d)(1)(A), which provides that the one-year period runs from the date the petitioner's conviction became final by the conclusion of direct review or the expiration of the time for seeking such review.

The Wisconsin Supreme Court denied the petitioner's petition for discretionary review on May 13, 2013. Dkt. No. 10-1. His one-year clock started once his time for seeking *certiorari* in the United States Supreme Court expired. Jimenez v. Quarterman, 555 U.S. 113, 120 (2009) ("direct review cannot conclude for the purposes of § 2244(d)(1)(A) until the availability of direct appeal to the state courts, and to this Court, has been exhausted.") (internal citations and quotations omitted). Under United States Supreme Court Rule 13, the petitioner had ninety days from the date the Wisconsin Supreme Court denied his petition for review to file a petition for writ of *certiorari* to the United States Supreme Court. See also 28 U.S.C. §2101(d); Clay v. United States, 537 U.S. 522, 525 (2003). The petitioner did not petition for *certiorari* and his ninety days for doing so expired on August 11, 2013. His one-year clock for filing a federal *habeas* petition began on that day. He did not file this petition until March 28, 2016—960 days, or more than two and a half years, from the date the clock began to run.

### 2. *Statutory Tolling*

AEDPA exempts certain time from the one-year limitations period; under 28 U.S.C. §2244(d)(2), "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."

On July 30, 2014, the petitioner filed a motion for post-conviction relief under Wis. Stat. §974.06. Dkt. No. 1-4. The Wisconsin Court of Appeals' December 22, 2015 decision recounts that the §974.06 motion "alleged ineffective postconviction and appellate counsel for failing to challenge his competency, object to juror bias, investigate prosecutorial misconduct, and pursue additional witnesses and information." Dkt. No. 1-5 at 2. The Milwaukee County Circuit Court denied the motion on August 4, 2014, finding that the petitioner had "not set forth any specifics related to his claims, and therefore, his motion d[id] not set forth a viable claim for relief." Dkt. No. 1-4. The petitioner appealed and the District I Court of Appeals affirmed on December 22, 2015. Dkt. No. 1-5. The petitioner sought discretionary review in the Wisconsin Supreme Court and that court denied review in an order on March 7, 2016. Dkt. No. 1-6.

The respondent wisely does not assert that the time from July 30, 2014 until March 7, 2016 counts toward the one-year AEDPA limitations period. "[T]here can be no dispute that the review granted in [Wis. Stat.] §974.06 is prototypical collateral review", Graham v. Borgen, 483 F.3d 475, 482 (7th Cir.

2007). For purposes of statutory tolling, the 586-day period from July 30, 2014 to March 7, 2016 does not count toward the petitioner's one-year statute of limitations. Subtracting that time from the 960 days that elapsed between the start of the AEDPA clock and the date the petitioner filed his federal case leaves 374 days elapsed on the ADEPA clock—a year and nine days.

The respondent speculates that the petitioner might try to argue that the clock stopped "when he tried to litigate some sort of motion for postconviction discovery in the trial court." Dkt. No. 10 at 5, n.2. The respondent says the petitioner filed the discovery motion on September 23, 2013 and that the trial court denied it three days later, on September 26, 2013. <u>Id.</u> The petitioner apparently asked the trial court to reconsider its ruling on October 10, 2013; the court denied that motion the next day, on October 11, 2013. <u>Id.</u> (citing Dkt. No. 5 at 2). The respondent argues that these two filings do not constitute "properly filed application[s] for state post-conviction or other collateral review with respect to the pertinent judgment or claim" as defined by 28 U.S.C. §2244(d)(2). <u>Id.</u> at 5-6, n.2.

The Seventh Circuit has held that

> [w]hether a collateral attack is 'properly filed' can be determined in a straightforward way by looking at how the state courts treated it. If they considered the claim on the merits, it was properly filed; if they dismissed it for procedural flaws such as untimeliness, then it was not properly filed.

<u>Freeman v. Page</u>, 208 F.3d 572, 576 (7th Cir. 2000). The court does not have copies of these motions or the decisions from the Milwaukee County Circuit Court—neither the respondent nor the petitioner provided the court with them.

9

But the public docket for the Milwaukee County Circuit Court shows an entry on September 23, 2013 for a "Motion," and describes it as "Defendant's pro se motion for postconviction discovery." State v. Moreland, 2009CF000050 (Milwaukee Cty.), available at https://wcca.wicourts.gov. The docket shows an entry on September 26, 2013 for a "Decision and order;" the docket text reads, "Decision and Order Denying Motion for Postconviction Discovery, signed and filed. THEREFORE, IT IS HEREBY ORDERED, that the defendant's motion for postconviction discovery is DENIED." Id. The October 10, 2013 docket entry reads, "Defendant's pro se motion for consideration." Id. There is another entry on October 11, 2013, which reads, "Decision and order denying motion for consideration received and filed." Id. These public docket entries support the respondent's argument that the plaintiff asked for discovery, not for post-conviction review of his "pertinent judgment"—his conviction. They were "postconviction" motions only in the sense that he filed them after he was convicted; they were not collateral attacks on his conviction. See Wall v. Kholi, 562 U.S. 545, 556, n.4 (2011) (in concluding that a motion to reduce sentence qualified as a properly-filed postconviction motion for the purpose of statutory tolling, writing that "a motion to reduce sentence is *unlike a motion for post-conviction discovery* or a motion for appointment of counsel, which *generally are not direct requests for judicial review of a judgment and do not provide a state court with authority to order relief from a judgment*") (emphasis added). But see Rico v. Hepp, No. 18-C-885, 2018 WL 6592097, at *2 (E.D. Wis. Dec. 14, 2018) (concluding without citation to authority that "[petitioner's] motions to

vacate the DNA surcharge and for discovery and inspection tolled the limitation period[.]"). The court will not exclude the days that the September 23, 2013 motion for discovery or the October 10, 2013 motion to reconsider were pending from the time elapsed on the AEDPA clock.

3. *Calculation*

"If the state raises an AEDPA statute of limitations defense, the petitioner must come forward with come evidence to support his claim that, with the benefit of the *Houston* mailbox rule, 365 countable days have not elapsed from the time his state-court judgment became final to the time he filed his federal habeas petition." Ray v. Clements, 700 F.3d 993, 1008 (7th Cir. 2012) (citing Allen v. Culliver, 471 F.3d 1196, 1198 (11th Cir. 2006)). The "Houston mailbox rule," deriving its name from the Supreme Court's decision in Houston v. Lack, 487 U.S. 266, 275-76 (1988), holds that a prisoner "files" something when he delivers it to the prison authorities for mailing. Id. at 1004. The Clerk's office for the Eastern District of Wisconsin file-stamped the petition as having been received on March 28, 2016. Dkt. No. 1. The petitioner, however, did not sign or date his petition, or fill out the optional "certificate of inmate mailing" page of the petition. Dkt. No. 1 at 14. The burden was on the petitioner to provide the court with evidence as to when he delivered his petition to prison authorities for filing. He has not done so, so the Houson mailbox rule does not help him.

The respondent calculates that 374 days have elapsed on the petitioner's one-year clock. Dkt. No. 10 at 2. As noted above, the court agrees. The petitioner filed the federal petition nine days late.

4.    *Equitable Tolling*

The court checked the math only to assure itself that the petition was late; the petitioner himself has not argued that he timely filed the petition. Rather, he asks the court to equitably toll the limitations period.

A court may invoke the doctrine of equitable tolling if the petitioner shows "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010). "Equitable tolling is an extraordinary remedy and so 'is rarely granted.'" Obriecht v. Foster, 727 F.3d 744, 748 (7th Cir. 2013) (quoting Simms v. Acevedo, 595 F.3d 774, 781 (7th Cir. 2010)). "A petitioner bears the burden of establishing both elements of the *Holland* test; failure to show either element will disqualify him from eligibility for tolling." Mayberry v. Dittman, 904 F.3d 525, 529-30 (7th Cir. 2018) (citing Menominee Indian Tribe of Wis. v. United States, ___ U.S. ___, 136 S. Ct. 750, 755-56 (2016))."The realm of equitable tolling is a highly fact-dependent area in which courts are expected to employ flexible standards on a case-by-case basis." Socha v. Boughton, 763 F.3d 674, 683 (7th Cir. 2014) (internal quotations omitted). The remedy is "rare" and "'reserved for extraordinary circumstances far beyond the litigant's control that prevented timely filing.'" Id. (quoting Nolan v. United States, 358 F.3d 480, 484 (7th Cir. 2004)). A district

court must "evaluate the circumstances holistically, considering 'the entire hand that the petitioner was dealt' rather than taking each fact in isolation." Gray v. Zatecky, 865 F.3d 909, 912 (7th Cir. 2017) (quoting Socha, 763 F.3d at 686)).

The petitioner presents two facts which he asserts prevented him from timely filing the petition: he suffers from schizophrenia and the state prevented him from filing on time. Dkt. No. 11 at 1-2. He argues that he diligently pursued his rights as evidenced by several letters he wrote to various legal entities such as the Milwaukee County Circuit Court and the Clerk of Court for the Eastern District of Wisconsin. Id. at 3. Finally, the petitioner contends he has "exculpatory scientific evidence not previously considered." Id. He says that he has evidence that the victim had medical conditions which could have lent credibility to the petitioner's claims; he also speculates that her pre-existing, untreated conditions could have been the substantial cause of her death. Id.

a.    Extraordinary circumstances

The petitioner explains that he "suffered from the negative symptoms of schizophrenia that impaired his ability to start and follow through with the many demands required for legal work." Dkt. No. 11 at 1. He attached an article from the National Alliance on Mental Illness titled "Schizophrenia," which offers background information on the illness. Dkt. No. 1-1 at 1-5. He also attached two Wisconsin Department of Corrections Psychiatric Reports. Dkt. No. 11-1 at 5-7. The first, dated October 15, 2013, indicated that the petitioner refused to confer with the psychiatrist via telemedicine. Id. at 5. The

psychiatrist reported that from his review of the petitioner's Medication Administration Record, "it does not appear that he has taken either his Benadryl or risperidone in a fairly extended period of time, but I am going to keep these available for a bit longer." Id. The "Diagnosis" section of the report listed "1. Schizophrenia 2. Polysubstance Dependence." Id.

The petitioner's second psychiatric report is dated March 3, 2016. Id. The psychiatrist noted that the petitioner asked to adjust his medicine. Id. Under the "Mental Status Examination" section, the psychiatrist reported that

> [d]uring the conversation, there was no evidence of speech or thought disorder. His mood is stable, although he reports feeling depressed and he is talking about it. I am not concerned about safety issues. He is not harboring thoughts of harming himself or harming others. He has no complaints of disturbance of his sensorium. His memory is intact. He is fully oriented. He is competent to give informed consent to take psychotropic medication and one is depressed and seems to be going the wrong way with his antidepressant. We will trust his judgment at the present time.

Id. at 6. Under the "Diagnosis" section, the psychiatrist listed: "1. Schizophrenia Paranoid Type, Chronic, in Near Complete Remission. 2. Cannabis Use Disorder. 3. Cocaine Use Disorder. 4. Heroin Use Disorder. 5. Physical complaints of back pain, and feelings of skin tightness, none today, managed by medical doctor." Id.

The petitioner also attached an affidavit to his response brief. Dkt. No. 11-2. The affidavit explains the petitioner's experience with his schizophrenia; he says that when he doesn't have the right psychiatric treatment, "I deal within an alternate reality. I am more special than the average person. Consequently, I unintentionally lie about things that make[] no sense. My grip

on time, day, date and year slip behind terribly." Id. He states that while he was able to submit other legal filings, none of those filings required him to keep track of a one-year clock. Id.

As for the petitioner's allegation that the state prevented him from filing on time, the response brief alleges that

> there were many days during the one year period he was unable to research his case because the library was closed due to foggy weather, D.O.C. being understaffed; a Major institution four day lockdown and search, and while he was in segregation his legal work could not be located.

Id. at 2. The petitioner attaches a Wisconsin Department of Corrections "Information Request" form dated September 19, 2016 in which the petitioner asked an officer to

> confirm or deny that while my first time in seg. in about 1-15-14 I complained at least 2 wks I need certain legal work out of my property and after giving me the wrong legal work a couple of times you finally took me to a seg visiting booth where you had all my paperwork and let me get it myself.

Dkt. No. 1-1 at 8. An officer wrote "confirmed" in the area provided for a response. Id.

"Many cases have concluded that an applicant's mental limitations can support equitable tolling." Perry v. Brown, No. 19-1683, 2020 WL 702834, at *2 (7th Cir. Feb. 12, 2020) (citing Mayberry, 904 F.3d at 530; Schmid v. McCauley, 825 F.3d 348, 350 (7th Cir. 2016); Davis v. Humphreys, 747 F.3d 497, 498 (7th Cir. 2014)). Mental illness constitutes an extraordinary circumstance to toll the limitations period "'only if the illness *in fact* prevents the sufferer from managing his affairs and thus from understanding his legal

15

rights and acting upon them.'" <u>Mayberry</u>, 904 F.3d at 530 (quoting <u>Obriecht</u>, 727 F.3d at 750-51) (emphasis in <u>Obriecht</u>). In <u>Mayberry</u>, the Seventh Circuit considered a petitioner who had been found incompetent to stand trial in 1999 and who scored in the "intellectually impaired or mentally retarded range" <u>Id.</u> at 530. It concluded that equitable tolling was not warranted, in part because the petitioner did not explain "how this past finding of incompetence, his low I.Q., or an unelaborated prison classification of 'serious mental illness' 'actually impaired his ability to pursue his claims.'" <u>Id.</u> at 531. The <u>Mayberry</u> court observed that the petitioner had managed to file several motions in state court as well as a premature federal *habeas* petition in district court during the period for equitable tolling. <u>Id.</u>

Here, the petitioner faces a similar problem; he has not shown how his schizophrenia actually impaired his ability to pursue his claims. Despite his schizophrenia, the petitioner was able to file a state court *habeas* petition in July of 2014—before his one-year federal *habeas* clock had expired. While the petitioner states that his schizophrenia caused him to lose track of days and times, his August 3, 2014 letter to the Milwaukee County District Attorney's office—submitted to support his claim of diligence—demonstrates an understanding that he needed to file his state post-conviction motion before an August 8, 2014 deadline. Dkt. No. 11-1 at 10. The petitioner's February 9, 2016 letter to the Clerk of Court for the Eastern District of Wisconsin—also submitted to support the petitioner's argument that he diligently pursued his rights—asked whether an additional post-conviction motion in Wisconsin State

court "will affect the 1 year time limit for filing a habeas corpus[.]" Dkt. No. 11-1 at 11. And in early March of 2016 (just before the petitioner filed this petition and while the remainder of his one-year clock was running out), his psychiatric report from the Wisconsin Department of Corrections noted that his schizophrenia was in "Near Complete Remission." Dkt. No. 11-1 at 6. The petitioner's own evidence does not support his claim that his schizophrenia rendered him unable to manage his legal affairs.[1]

The court also considers the petitioner's schizophrenia in the context of his entire situation. The petitioner has alleged that he was prevented from accessing his legal work for two weeks while in segregation and that he had limited access to the law library due to foggy weather, understaffing and an institutional lockdown.

In Socha, 763 F.3d 674, the petitioner did not receive his state court file until only forty days remained for him to file for federal *habeas* review. Id. at 684. That petitioner alleged that he could spend only eighty minutes in the library every two weeks and could not bring legal materials back to his cell

---

[1] The court also notes that to avail himself of equitable tolling, the petitioner must show that he faced an "external obstacle" that is "beyond a litigant's control." Perry, 2020 WL 702834, at *1. The petitioner admits—and his psychiatric report shows—that treatment helps him. As his affidavit states, "when I am aggravated and *without the right amount of psychiatric treatment* I deal with an alternate reality." Dkt. No. 11-2 (emphasis added). The psychiatric report from October 2013 indicated that the petitioner had not been taking his prescribed medications "for quite some time." Dkt. No. 11-1 at 5. This evidence raises the possibility that even if the petitioner's symptoms were bad enough to prevent him from timely filing his petition, the severity of those symptoms may have resulted from his refusal to take the actions that would have managed them.

because he could not afford to make photocopies. <u>Id.</u> at 685. He also alleged that he spent time in administrative segregation and "the record show[ed] that he was in segregation for the entire period between the receipt of his files and the filing deadline." <u>Id.</u> While the Seventh Circuit repeated that "placement in administrative segregation alone is also not enough by itself[,]" it found equitable tolling warranted in that case. <u>Id.</u>

By contrast, in <u>Gray</u>, 865 F.3d at 913, the petitioner alleged "that his access to the prison's law library was constrained 'due to various institutional lockdowns ranging from (2) weeks up to (10) months, with (2) lockdowns in the past (3) months lasting a total of (3) weeks.'" <u>Id.</u> That petitioner spent 113 days of his limitations period waiting for the Indiana Court of Appeals to give him his case record. <u>Id.</u> The Seventh Circuit affirmed the district court refusal to grant equitable tolling; it wrote that although Gray had argued that the institutional lockdowns had restricted his access to legal materials, "the district court could reasonably have found that he did not make as compelling a showing as Socha, who was almost totally deprived of meaningful library access because of his placement in administrative segregation." <u>Id.</u> at 913.

The petitioner here has not alleged that there was any delay in his receiving his state court file. He alleges he had limited access to his legal papers because of a four-day institutional lockdown and because he wasn't able to see the papers for two weeks while in segregation. The petitioner has provided no evidence of the alleged four-day lockdown. He *has* presented evidence that he was in segregation in January of 2014. Dkt. No. 11-1 at 8. It

appears that during that time, he asked corrections officers to bring him certain legal work, but that they did not bring him the right legal work. Id. It appears that after two weeks, corrections officers arranged for the petitioner to view the all of his legal material in a visiting booth and locate the legal work he was looking for. Id.

At best, this evidence shows that the petitioner suffered a two-week delay in January 2014—about five months after the one-year AEDPA clock began to run. He does not explain how a two-week delay prevented him from timely filing his petition when he had months left in which to do so.

The petitioner also claims that he lost an unspecified amount of time in the library due to "understaffing" and "foggy weather." Dkt. No. 11 at 2. He clarifies in an affidavit that a corrections officer could testify that "the E-East 12:30 pm library period was canceled at least five times while [he] was on that unit during the tolling period because no officer was available for that post." Dkt. No. 11-2 at 2. The petitioner does not explain how frequently he received a library period or how long each period was; there is no way for the court to gauge how much five cancellations would have impacted his total library/research time. The petitioner has not demonstrated that he was "almost totally deprived of meaningful library access because of his placement in administrative segregation." Gray, 865 F.3d at 913.

The plaintiff's evidence that he suffered from schizophrenia and lost some preparation time due to being in segregation and missing some library

periods does not establish the "extraordinary circumstances" that would justify equitable tolling.

b.     Reasonable Diligence

Because the petitioner has not demonstrated extraordinary circumstances, he cannot avail himself of equitable tolling. See Menominee Indian Tribe,136 S. Ct. at 755-56 (if petitioner fails to show either element of Holland test, equitable tolling will not apply). Even if he had demonstrated extraordinary circumstances, the plaintiff has not shown that he diligently pursued his rights.

"The diligence required for equitable tolling purposes is reasonable diligence . . . not maximum feasible diligence." Holland, 560 U.S. at 653. In Carpenter v. Douma, the Seventh Circuit surveyed two other cases in which a petitioner had been found have diligently pursued his rights:

> The Supreme Court in *Holland* found that a habeas petitioner had exercised reasonable diligence by writing his attorney "numerous letters seeking crucial information and providing direction"; "repeatedly contact[ing] the state courts, their clerks, and the Florida State Bar Association;" and preparing "his own habeas petition *pro se* and promptly fil[ing] it with the District Court" on the day he discovered that his AEDPA clock had expired. *Id.* In *Socha*, we similarly held that a habeas petitioner had exercised reasonable diligence by repeatedly writing his attorney requesting access to his file, pleading with the public defender's office for help, and alerting the court "before the deadline arrived" that he sought to preserve his rights.

Carpenter v. Douma, 840 F.3d 867, 870-71 (7th Cir. 2016). The Carpenter petitioner, by contrast, filed two motions in federal court to stay and hold in

abeyance his federal *habeas* petition; the Seventh Circuit found those motions did not to constitute "reasonable diligence." Id. at 871.

The petitioner here has submitted five letters in support of his diligence. The first is a letter from the petitioner to the Milwaukee District Attorney's Office dated August 3, 2014, in which he asks that court to file his post-conviction motion prior to an August 8, 2014 deadline. Dkt. No. 11-1 at 10. The second letter is a February 9, 2016 letter from the petitioner to the Clerk of Court for the Eastern District of Wisconsin, in which he asks whether filing another Wis. Stat. §974.06 motion "will affect the 1 year time limit for filing a habeas corpus[.]" Dkt. No. 11-1 at 11. The third letter is from a *pro se* staff attorney in the Eastern District of Wisconsin responding that court staff could not provide legal advice to litigants. Dkt. No. 11-1 at 13. The fourth is a February 24, 2016 letter from the Wisconsin State Public Defender to the petitioner, which advises the petitioner that his case does not satisfy their criteria for discretionary appointment. Dkt. No. 11-1 at 14-15. The fifth is a March 21, 2016 letter from the Wisconsin State Public Defender's Office declining the petitioner's repeated request for discretionary appointment of counsel. Dkt. No. 11-1 at 16. The court also can consider the fact that the petition was filed only nine days after the limitations period expired.

These letters do not support the petitioner's claim of reasonable diligence. All the letters—with the exception of the petitioner's letter to the Milwaukee County District Attorney's office—are dated in 2016. The majority of

the one-year clock (353 of the 365 days) ran from August of *2013* through July of *2014*.

The petitioner has presented almost no evidence of what he was doing to pursue his rights from August 2013 to July 2014. He submitted a single letter from August 2014, asking the Milwaukee County District Attorney's Office to file his Wis. Stat. §974.06 motion.[2] Dkt. No. 11-1 at 10. He also filed the September 2013 discovery motion and the October 2013 motion for reconsideration. State v. Moreland, Case No. 2009CF00050 (Milwaukee Cty.), available at https://wcca.wicourts.gov. It also appears that the petitioner wrote to the Food and Drug Administration for information about fentanyl patches sometime in 2013—he attached a response letter from the FDA dated November 21, 2013. Dkt. No. 11-1 at 18. Apart from these activities, the publicly available docket indicates no activity in the petitioner's case between October 2013 and July 2014. State v. Moreland, Case No. 2009CF00050 (Milwaukee C'nty), available at https://wcca.wicourts.gov. The petitioner has not explained why he did not file a post-conviction motion in state court during the first seven months of 2014. Unlike the petitioner in Socha, the petitioner here has not demonstrated that he didn't have his file. Unlike the petitioner in

---

[2] It is not clear why the petitioner would ask the *prosecuting authority*—his litigation opponent—to file pleadings for him. The District Attorney's Office did not represent him. He could have filed the motion directly with the court. His letter to the DA's office is dated August 3, 2014—five days before he says his deadline was to expire. He mailed the letter to the Milwaukee County District Attorney from Redgranite Correctional Institution in Waushara County; a motion would have reached the court just as quickly as the letter reached the DA.

<u>Carpenter</u>, he has provided no proof that he tried to file anything in federal court until after his statute of limitations period passed. The petitioner has not satisfied the diligence prong of the <u>Holland</u> test.

    c.  Unconsidered exculpatory evidence

  Finally, the petitioner asserts that the court should excuse his untimely because "he has presented exculpatory scientific evidence not previously considered." Dkt. No. 11 at 3. He claims that the victim had asthma and HIV/AIDS, which could "have lent credibility to [the petitioner's] story;" he also speculates that the victim's preexisting, untreat [sic] illiness [sic] could have been the substantial cause of her death." <u>Id.</u> The respondent construes this claim as an actual innocence argument.

  "Actual innocence is an equitable exception that renders the time limit set forth in section 2244(d)(1) inapplicable." <u>Arnold v. Dittman</u>, 901 F.3d 830, 836 (7th Cir. 2018) (citing <u>McQuiggin v. Perkins</u>, 569 U.S. 383, 386 (2013)). To serve as a gateway to review a *habeas* claim barred by untimeliness,

> [a] claim of actual innocence must be both credible and founded on new evidence. *Schlup [v. Delo]*, 513 U.S. [298,] 324, 115 S.Ct. at 865. To be credible, the claim must have the support of "reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." *Ibid.* That evidence must also be new in the sense that it was not before the trier of fact. *Ibid.*; *Gladney [v. Pollard]*, 799 F.3d [889] at 896, 898 [(7th Cir. 2015)]. The petitioner's burden is to show that, in light of this new evidence it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt.

<u>Id.</u> at 836-37.

The petitioner has not produced the credible, exculpatory evidence necessary to support a claim of actual innocence. He did not provide the court with the evidence he claims shows that the victim suffered from asthma or HIV/AIDS, nor does he explain how that evidence would have buttressed his credibility or shown that he was not responsible for the victim's death. In his petition, the petitioner discusses toxicology reports and fentanyl patches. Dkt. No. 1. At one point, he says that the victim had pneumonia and asthma, and "[c]onsequently, the small amount from his after she had stolen it from him and wearing it an hour or two until it took it from her killed her in her sleep the next day." Id. at 8-9. He alleged that his lawyer was ineffective "for not investigation [his] story the victim died after she stole one of his patches and only wore it a short time." Id. at 9. None of this tells the court what the petitioner was convicted of doing to cause the victim's death. None of this tells the court how evidence that the victim had asthma or HIV/AIDS would have shown that he was innocent of whatever he was convicted of doing.

The petitioner provided the court with (1) what appears to be one page of the victim's autopsy report, with the phrase "Outline of adhesive patch on right thigh" in parentheses, dkt. no. 4 at 8; (2) a November 21, 2013 letter from the Food and Drug Administration responding to the petitioner's inquiries about the safety of fentanyl patches, dkt. no. 1-7 at 4; (3) what appears to be an informational sheet about fetanyl with handwritten stars next to sections cautioning against fentanyl use for patients with respiratory issues, dkt. no. 16-2 at 4; and (4) what appears to be a page from the criminal complaint in

which the petitioner underlined a sentence which indicated that the victim "was born with the AIDS virus." Dkt. No. 16-2.

The petitioner never explains the significance of these documents, other than to say that victim's pre-existing conditions could have caused her death. But this sparse evidence does not establish that the petitioner's asthma or HIV acted as the substantial cause of her death. The petitioner has not alleged, or proven, that this evidence was unavailable to him at the time of his trial. As the Wisconsin State Public Defender's Office explained to the petitioner,

> even if a respiratory condition contributed to the victim's death, your letter does not contradict the medical examiner's findings that the Fentanyl overdose was the primary cause of death. This document does not disprove the jury's conclusion that the drugs you provided to the victim were a substantial factor in her death; it simply means that a respiratory condition also may have contributed to her death.

Dkt. No. 11-1 at 15. The evidence does not meet the demanding standard of showing that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt.

## III.    Remaining Motions

On October 18, 2018, the petitioner filed document titled "Motion to apply the mailbox rule to the postconviction discovery motion, motion for reconsideration, and 974.06 motion for postconviction relief and affidavit in support." Dkt. No. 15. The petitioner argued exactly what the respondent had predicted he would—that his discovery motion and his motion to reconsider should have tolled the AEDPA clock. Id. He also asserted that these motions sat at the institution after he filed them, and that the mailbox rule should

apply. Id. The court already has concluded that these motions were not "properly filed" postconviction motions for the purposes of statutory tolling, and that the Houston mailbox rule does not apply. The court will deny this motion.

Almost a year later, on August 26, 2019, the petitioner filed a motion to renew information to grant tolling and to appoint counsel. Dkt. No. 16. This motion reiterates his arguments about the two weeks in segregation in 2014 when he didn't have access to his legal papers. Id. at 1-2. He also asked the court to appoint counsel because he asserts the issues in his case are complex and "it is taking a long time to make a decision in this case." Id. at 2. The court has ruled that the two weeks the petitioner did not have his papers while in segregation do not constitute extraordinary circumstances. Because the court has found that the petition is time-barred and that equitable tolling does not apply, the court will dismiss the petition, and there is nothing for appointed counsel to do. Finally, the delay in deciding the case is the result of the court's heavy case load and trial schedule, not the petitioner's lack of counsel. The court will deny this motion.

## IV.    Certificate of Appealability

Under Rule 11(a) of the Rules Governing Section 2254 Cases, the court must consider whether to issue a certificate of appealability. A court may issue a certificate of appealability only if the applicant makes a substantial showing of the denial of a constitutional right. See 28 U.S.C. §2253(c)(2). The standard for making a "substantial showing" is whether "reasonable jurists could debate whether (or for that matter, agree that) the petition should have been resolved

in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 472, 484 (2000) (internal quotations omitted).

The Seventh Circuit recently has issued several decisions concerning equitable tolling, with particular emphasis on the extent to which a petitioner's mental limitations may constitute extraordinary circumstances. See Perry, 2020 WL 702834, at *3; Mayberry, 904 F.3d at 530; Schmid, 825 F.3d at 350. While this court does not believe that the petitioner has demonstrated extraordinary circumstances or reasonable diligence to warrant equitable tolling, the court supposes that his allegations about his schizophrenia and the various institutional barriers to timely filing could persuade a reasonable jurist to debate whether to apply the doctrine of equitable tolling and allow his untimely petition. Accordingly, the court will issue a certificate of appealability as to the issue of equitable tolling.

## V. Conclusion

The court **GRANTS** the respondent's motion to dismiss. Dkt. No. 9.

The court **DENIES** the petitioner's motion to apply the mailbox rule to the postconviction discovery motion, motion for reconsideration, and §974.06 motion for postconviction relief and affidavit in support. Dkt. No. 15.

The court **DENIES** the petitioner's motion to renew information to grant tolling and to appoint counsel. Dkt. No. 16.

The court **ORDERS** this case is **DISMISSED** as untimely under 28 U.S.C. §2244(d)(1)(A).

The court **GRANTS** the petitioner a certificate of appealability on the issue of equitable tolling.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within 30 days of the entry of judgment. See Fed. R. of App. P. 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. R. App. P. 4(a)(5)(A).

Under limited circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within 28 days of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ P. 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 10th day of March, 2020.

**BY THE COURT:**

_____

**HON. PAMELA PEPPER**
**Chief United States District Judge**